[No. 27809. Department One. February 17, 1940.]

ARDEN FARMS COMPANY, *Appellant,* v. THE CITY OF SEATTLE *et al., Respondents.*[1]

[1]Reported in 99 P. (2d) 415.

Little & Leader and Robert L. Palmer, for appellant.

A. C. Van Soelen and C. V. Hoard, for respondents.

MILLARD, J.—An ordinance (ordinance No. 53002, § 7, subd. "m.") of the city of Seattle prohibits the sale of milk which has had the cream line increased by any artificial means. Arden Farms Company, a foreign corporation, was directed by the commissioner of health of the city of Seattle to discontinue sale of milk to which it had added homogenized cream, which deepened the cream line of the Arden Farms Company's product. Thereupon, the Arden Farms Company brought this action to permanently enjoin the city of Seattle and its commissioner of health from interfering with plaintiff's distribution and sale of the product in question, on the ground that the addition of homogenized cream to the milk was not an "artificial" increase in the cream line within the meaning of the ordinance, and on the further ground that, if the ordinance is interpreted in the sense of the construction given to it by the city, the ordinance is invalid. The trial court held that the addition of homogenized cream to the whole milk "artificially" increases the cream line within the meaning of the ordinance, and that the ordinance is a valid exercise of the police power of the city as tending to prevent the deception of the consuming public. This appeal is from the decree dismissing the action.

The facts are as follows: The appellant is engaged in the business of distributing and selling milk, cream, and other dairy products. While its principal place

of business in this state is in Seattle, appellant also distributes and sells ice cream and Arden milk products in other localities. Prior to August, 1938, appellant was not selling in the Seattle market pasteurized milk richer than $4\frac{1}{2}\%$ in butter fat. Several of its competitors were distributing milk containing 5% in butter fat. On August 1, 1938, appellant commenced distribution and sale in Seattle of a 5% milk under the trade name "Arden 5% Rich Milk."

In marketing milk of a given butter fat content, the milk must be standardized; that is, to bring it to the desired richness, measured in butter fat, cream must be added to, or removed from, the milk. One illustration of appellant is that, if the distributor receives one hundred gallons of milk which tests $4\frac{1}{4}\%$ butter fat from one farmer and another hundred gallons testing $4\frac{3}{4}\%$ from a second farmer, the average butter fat of the two hundred gallons would be $4\frac{1}{2}\%$. If a 5% milk is desired, richer cream, the exact quantity, mathematically computed according to the quantity and quality of the milk and cream, is added to bring the milk to the given richness. This is the process of standardization commonly used in the dairy industry at the present time.

The milk of cows does not test, usually, 5%; hence, it is necessary to add richer cream. The 5% milk marketed by appellant's competitors prior to August 1, 1938, was standardized by the addition of whole pasteurized cream. The appellant, however, in standardizing its "Arden 5% Rich Milk," adds pasteurized cream that is also homogenized, so that its product is a combination of whole pasteurized milk and homogenized pasteurized cream. It is this distinguishing fact, as observed by appellant, which gives rise to the question before us.

Homogenization of milk and cream has been recog-

nized by scientific and medical authorities and commonly used in this country and Canada for not less than twenty years. It is a simple and strictly mechanical process. It consists of nothing more than running the cream through a high pressure machine called a homogenizer. The liquid is pumped into the machine, and a tremendous pressure, by way of multiple piston pumps, forces the liquid to be processed through apertures, or small openings, known as homogenizer valves. That is, the milk and cream are pumped into the homogenizer and forced out under high pressure through the homogenizer valves.

This process of *homogenization does not add* any *artificial or foreign substances to the cream and takes nothing away,* the principal effect being the physical change in the cream. The mechanically applied pressure breaks up the fat globules in the cream into many more globules of smaller size, the fat thereby being greatly subdivided. The fat globules in homogenized cream do not have, because they are smaller, the buoyancy of those in ordinary cream, and consequently the cream line of appellant's "Arden 5% Rich Milk" is deepened over what it would be if nonhomogenized cream were added. The testimony as to the extent the cream line is deepened fixes the figure at from three-fourths of an inch to one and one-half inches.

In the digestion of milk and cream by the human organs, it is essential that the fat be emulsified or broken down into small particles in order to be assimilated. The mechanical process of homogenization does this, hence "Arden 5% Rich Milk" is more easily digested in the proportion that it contains homogenized cream, and for this reason is more healthful than ordinary 5% milk of which no part is homogenized. There is some evidence that the addition of the homogenized cream improves the flavor of the product. There is no

contention on the part of the city that this milk is harmful. It was specifically stipulated, prior to the trial, that "Arden 5% Rich Milk" does not contain any foreign or unhealthful substances or ingredients and is as healthful and nutritious as ordinary 5% pasteurized milk no part of which is homogenized.

At all times in marketing its "Arden 5% Rich Milk," the appellant has placed upon each bottle containing the product a label stating: "Arden 5% Rich Milk. Whole milk with homogenized cream added, improves flavor and deepens cream line. Pasteurized Grade A, Arden Farms Co."

By the express provisions of ordinance No. 53002, which was in effect August 1, 1938, regulating the sale of milk and milk products, homogenized milk or cream —which is defined in one of the sections of ordinance No. 53002 as milk or cream subjected to the mechanical process of homogenization—is declared to be a lawful product for sale and distribution if the container is properly labeled. Subdivision "m" of § 7 of the ordinance prohibits the sale of milk which has had the cream line increased by any *artificial* means. The pertinent provisions of ordinance No. 53002 read as follows:

"Section 1. . . . (r) the phrases 'homogenized milk' and 'homogenized cream' and 'emulsified milk' and 'emulsified cream,' wherever used in this ordinance, shall be held and construed to mean and include the milk or cream, respectively, which has been subjected to the mechanical process of homogenization, or emulsification, as the case may be. . . .

"Section 7. It shall be unlawful for any person to sell, offer for sale, or expose for sale, for human consumption, in the City of Seattle, the following: . . .

" (d) Skim milk; homogenized, or emulsified milk or cream; sour milk or cream; buttermilk or cultured buttermilk, when made of pasteurized milk or cream,

the final container of which is not labeled to show its true character. . . .

"(m) Milk which has had the cream line increased by any artificial means."

August 29, 1938, appellant was advised by the health commissioner of the city of Seattle to cease marketing "Arden 5% Rich Milk" for the reason that it violated § 7 (m) of ordinance No. 53002. Appellant's Seattle division manager had some discussion with the city commissioner of health concerning the product and its proper labeling, but nothing was done to stop the sale of this milk. No question was raised by the state director of agriculture, who is charged with the duty of enforcement of the state dairy code, as to the right of appellant to distribute and sell its "Arden 5% Rich Milk" under the state law. The statute provides that, so long as the containers are correctly labeled as to their contents and the product is not adulterated, the sale and distribution of the product are not unlawful:

"Nothing in this act shall be construed to prevent the use of fresh, wholesome, unsalted butter and skimmed milk or other dairy product, homogenized or emulsified and used in the place of cream: Provided, that the product shall be labeled and sold or served as homogenized cream or emulsified cream, and unless the person served therewith be distinctly informed at the time served of the true nature and character thereof." Rem. Rev. Stat., § 6221 [P. C. § 1855-59]; Laws of 1919, chapter 192, p. 641, § 59.

"No persons, firm or corporation shall add to any milk, cream or condensed milk any gelatine, gum or other substance for the purpose of increasing the apparent richness of such milk, cream or condensed milk: Provided, however, that nothing in this act shall be construed as prohibiting the use of harmless coloring matter and common salt (sodium chloride) in butter or cheese, or the use of harmless coloring and flavoring matter in ice-cream and ice milk, nor the use of rennet, lactic acid or pepsin in the process of manu-

facturing cheese." Rem. Rev. Stat., § 6230 [P. C. § 1855-68]; Laws of 1919, chapter 192, p. 644, § 68.

Large expenditures in advertising and building up a substantial demand for its product were made by appellant. Two dairy companies, competitors of appellant, also distributed milk with homogenized cream added, and one of those competitors is still doing so. July 17, 1939, almost one year after appellant began selling "Arden 5% Rich Milk," the health commissioner of the city of Seattle demanded that appellant discontinue the sale of the milk for the reason that the process or means by which appellant's product was produced was an artificial one, therefore the cream line of the milk was increased by artificial means in violation of § 7 (m) of the Seattle city ordinance No. 53002. This action was thereupon instituted by appellant, with the result as stated above.

■ Counsel for appellant first complain of the admission, over objection, of the testimony of Dr. Smith, who was the technical adviser of the Seattle council when it drafted ordinance No. 53002, as to what the council intended in § 7 (m) of the ordinance. The objection of appellant to the testimony should have been sustained, and its subsequent motion to strike the testimony should have been granted. The intention of the city council is to be deduced from what it said. *In re Sanborn,* 159 Wash. 112, 292 Pac. 259. If a legislator who participated in the passage of an act cannot be permitted to testify as to its object and meaning— that is a rule which needs no citation of sustaining authority,— it logically follows that a third person who merely advised the legislative body cannot testify what was in the collective legislative mind as to the meaning of a doubtful law.

■ The admission of that improper testimony does not, however, constitute reversible error, as this is an

equity case triable *de novo* in this court, and we may disregard evidence which was inadmissible.

Counsel for appellant contend that the addition of homogenized cream to whole milk does not "artificially" increase the cream line within the meaning of § 7 (m) of ordinance No. 53002. It is insisted that, if that section is interpreted in the light of the whole ordinance, it will clearly appear that the city council did not intend to declare it unlawful to add homogenized cream to whole milk as appellant has done.

█ If we observe the rule that effect must be given to each and every part of a statute (*In re Phillips' Estate,* 193 Wash. 194, 74 P. (2d) 1015), and do not lose sight of the rule that, in the determination of the meaning of a doubtful or ambiguous word or expression in an act, we may look to the other portions of the act for aid (*State ex rel. Milwaukee Grain Elevator Co. v. Robinson,* 186 Wash. 557, 59 P. (2d) 365), it will be unnecessary to resort to lexicographic aids to ascertain the meaning of the term "artificial." See, also, *Featherstone v. Dessert,* 173 Wash. 264, 268, 22 P. (2d) 1050.

█ It is plain that the trial court disregarded the specific definition in the ordinance of homogenization as a mechanical process. Section 7 (r) of the ordinance defines homogenized milk and homogenized cream to include "the milk or cream which has been subjected to the mechanical process of homogenization." Manifestly, the trial court accepted as controlling Webster's general definition of the term "artificial," and incorrectly concluded that the actual process of homogenization is artificial. In sequence followed the erroneous holding that the term "artificial" in § 7 (m) of the ordinance refers specifically to homogenized cream.

While the dictionary defines "artificial" as "made or contrived by art; produced or modified by human skill and labor, in opposition to natural," it is patent that, if

the city council desired to prevent the deepening of the cream line by the addition of homogenized cream, which is cream mechanically processed, it should have employed the word "mechanical" instead of the word "artificial."

We can not agree with the contention that, as "artificial" is that which is opposed to "natural," therefore homogenized cream is "artificial" cream, or the cream line of the milk was increased by "artificial" means in adding to the milk homogenized cream. We read in respondents' brief:

"We concur generally in appellant's statement as to how its product is actually produced. We contend, however, that while the resulting product may in a sense be natural in that no foreign substance is added, the *process* or *means* by which such product is produced is not a natural one, and constitutes increasing the cream line by artificial means within the prohibition of Section 7 (m) of Ordinance No. 53002."

We are clear that § 7 (m) *supra,* as interpreted under the rules invoked above, is intended to prevent the addition of foreign substances to the milk to increase its cream line and apparent richness.

The dictionary defines oleomargarine as artificial butter; but, as appellant contends, it is a matter of common knowledge that that product contains mixtures of tallow, coloring matter, etc., and is made in imitation of butter. Real butter contains no foreign substances, but is a pure dairy product, and it would hardly be argued that it is artificial merely because the cream is churned into butter by machinery.

Another illustration by counsel for appellant is apt: A flower growing in one's yard is considered a natural flower. This is so, even if it has been cultivated and given unceasing care to increase its beauty. On the other hand, it is just as clear that wax or paper flowers are artificial. The distinction is that the first

is composed of the substance matter embodied from nature, even though man has improved it through the ages. The other is merely a substitute, containing foreign matter to that going to make up flowers. So in the case at bar, although the cream line of appellant's product is deepened by the use of homogenized cream, the product is still natural and is composed of the same substances as when it was withdrawn from the cow. It has been improved by man, but nothing foreign has been added to and nothing subtracted from that milk. If we contrast this with milk to which annato or some other foreign substance has been added, and read the ordinance, in which the term "artificial" is not defined, that term must be deemed to have been used by the city council in its commonly understood meaning.

By the express terms of the ordinance, whole pasteurized milk and cream are lawful. So, too, milk or cream, all of which is homogenized, is lawful, the only requirement being that the container thereof be labeled to show its true character. Section 7 (d), ordinance No. 53002. There is nothing in the ordinance prohibiting a combination of pasteurized and homogenized milk and cream.

The argument of counsel for the city that a combination of these lawful products is prohibited by § 7 (m), *supra,* and that the section was intended primarily to stop this very practice, which increases the cream line, we cannot follow. If the council had desired so to do, it could have clearly declared such a prohibition by plainly stating it was unlawful to add homogenized cream to whole pasteurized milk. As stated above, the intention of the city council is to be deduced from what it said; it may not be assumed that, if effect is given to each and every part of the ordinance, the city council intended by § 7 (m) *supra,* to prohibit such a combination.

We agree with counsel for appellant that "Arden 5% Rich Milk" is a pure dairy product and the fact that the cream line may be mechanically deepened by the addition of homogenized cream is not a violation of that portion of the city ordinance which makes it unlawful to offer for sale milk which has had the cream line increased by any artificial means. If appellant added annato or some other foreign substance to its milk to increase its cream line and apparent richness, that would constitute a violation of the ordinance, but no foreign substance is added to and nothing taken from "Arden 5% Rich Milk."

The necessity of discussing the other questions presented is obviated by what we have said above. It is also unnecessary to review the numerous authorities to the effect that the addition of foreign substances to a product constitutes "artificial" means. On principle, those cases are distinguishable from the case at bar.

The decree is reversed, and the cause remanded with direction to the trial court to grant to appellant the relief for which it prays.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.

