[Nos. 8537–2–II; 9619–6–II;    Division Two.    March 2, 1987.]
9821–1–II; 9822–9–II;
9823–7–II; 9824–5–II; 10185–8–II.

CENTENNIAL VILLAS, INC., *Respondent,* v. THE
DEPARTMENT OF SOCIAL AND HEALTH
SERVICES, *Appellant.*

SISTERS OF ST. JOSEPH OF PEACE HEALTH AND HOSPITAL
SERVICES, *Respondent,* v. THE DEPARTMENT
OF SOCIAL AND HEALTH SERVICES,
*Appellant.*

ST. JOSEPH HOSPITAL AND HEALTH CARE CENTER, *Respondent,* v. THE DEPARTMENT OF SOCIAL
AND HEALTH SERVICES, *Appellant.*

KADLEC MEDICAL CENTER, *Respondent,* v. THE
DEPARTMENT OF SOCIAL AND HEALTH
SERVICES, *Appellant.*

COULEE COMMUNITY HOSPITAL ASSOCIATION, *Respondent,* v.
THE DEPARTMENT OF SOCIAL AND HEALTH
SERVICES, *Appellant.*

KING COUNTY HOSPITAL DISTRICT No. 2, *Respondent,* v.
THE DEPARTMENT OF SOCIAL AND HEALTH
SERVICES, *Appellant.*

GRAYS HARBOR COMMUNITY HOSPITAL, *Respondent,* v. THE
DEPARTMENT OF SOCIAL AND HEALTH
SERVICES, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *James R. Watt* and *Morton M. Tytler, Assistants,* for appellant.

*Jerry Kindinger* and *Ryan, Swanson, Hendel & Cleveland,* for respondent Centennial Villas.

*Jonathan A. Kroman* and *Garvey, Schubert & Barer,* for respondent Sisters of St. Joseph of Peace.

*Paul L. Stritmatter* and *Stritmatter, Kessler & Mc-*

44

*Cauley,* for respondent Grays Harbor Community Hospital.

*Gregory M. Miller, Stephen I. Pentz,* and *Bennett & Bigelow,* for respondents Kadlec Medical Center, et al.

*Robert A. Castrodale,* for respondent Coulee Community Hospital.

*Thomas H. Grimm* and *Inslee, Best, Chapin, Doezie & Ryder, P.S.,* for respondent King County Hospital Dist.

*Stew Cogan* and *Thomas S. Linde* on behalf of Home Care Association of Washington, amici curiae for appellant.

*Mitchell J. Olejko* and *Susan J. Woyna* on behalf of Visiting Nurse Services of Seattle–King County, amici curiae.

PETRICH, J.—The State of Washington, Department of Social and Health Services (DSHS), appeals from summary judgments of the Thurston County Superior Court declaring that existing health care facilities need not apply for a second certificate of need before providing home health care services. The dispositive issue in this consolidated appeal is whether the offering of home health care services, which were not previously offered by an existing health care facility, qualifies it as a new health care facility for purposes of RCW 70.38.105(4)(a), thus requiring certificate of need (CON) review. We conclude that the supplying of home health care services as new and additional services by existing health care facilities is the creation of a "new health care facility" within the meaning of RCW 70.38-.105(4)(a). As such, existing health care facilities must obtain CON review before commencing home health care services. Accordingly, we reverse.

The respondents, Centennial Villas d/b/a Sherwood Terrace Nursing Center; Sisters of St. Joseph of Peace Health and Hospital Services; St. Joseph Hospital and Health Care

Center; Kadlec Medical Center; Coulee Community Hospital Association; King County Hospital District No. 2; and Grays Harbor Community Hospital, are nursing homes and hospitals in the state of Washington duly licensed to provide nursing home or hospital services. Each possesses a certificate of need for its individual operation.

Each of the respondents sought a ruling from DSHS that a second CON review need not be undergone before engaging in home health care services because the proposed capital expenditure would be less than the $500,000 threshold of RCW 70.38.105(4)(g). DSHS concluded that the provision of home health care services by the respondents constituted a new health care facility as defined by RCW 70.38.105(4)(a) and ruled that the respondents would have to undergo another CON review prior to providing such services.

After exhausting administrative remedies, the respondents sought declaratory and injunctive relief in the Thurston County Superior Court. On July 23, 1984, the first summary judgment, in favor of respondent Sherwood Terrace, was entered. The trial court held that an existing health care facility that provides home health care services is not a "new health care facility" within the meaning of RCW 70.38.105(4)(a). Therefore, the existing facility need not undergo an additional CON review. Further, the court held that the existing facility need not undergo an additional CON review under RCW 70.38.105(4)(g) because the facility's "new institutional health services" did not exceed the annual $500,000 operating budget threshold. This holding was applied in all summary judgment proceedings between the State and the other respondents. DSHS appeals. The seven appeals have been consolidated.

DSHS contends that existing health care facilities that provide home health care services are "new health care facilit[ies]" under RCW 70.38.105(4)(a), thus requiring CON review before providing such services. The respondents argue that home health care services are "new institutional health services" under RCW 70.38.105(4)(g) and,

as such, are exempt from CON review if the annual operating costs do not exceed $500,000.

This is a case of first impression to which we must apply the principles of statutory construction. "In construing statutes, the goal is to carry out the intent of the Legislature." *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 6, 721 P.2d 1 (1986). The court's interpretation must make the statute purposeful and effective. *Seven Gables*. Any statutory interpretation that would render an unreasonable and illogical consequence should be avoided. *Seven Gables*. Where statutes relate to the same subject matter, the entire sequence of statutes relating to a given subject must be considered in determining the legislative purpose. *See Beach v. Board of Adj.*, 73 Wn.2d 343, 438 P.2d 617 (1968); *In re Marriage of Little*, 96 Wn.2d 183, 634 P.2d 498 (1981). If a statute is unambiguous, the meaning must be derived from the actual language of the statute. *Stewart Carpet Serv., Inc. v. Contractors Bonding & Ins. Co.*, 105 Wn.2d 353, 358, 715 P.2d 115 (1986). Absent statutory definition, words used in a statute are to be given their usual and ordinary meaning. *See Garrison v. State Nursing Bd.*, 87 Wn.2d 195, 550 P.2d 7 (1976).

Here, the statute in question, RCW 70.38.105(4)(a) and (4)(g), is not ambiguous because the statute contains definitions. Therefore, the meaning of the statute must be derived from its language and from definitions contained in related statutes. *See Stewart Carpet; Beach v. Board of Adj., supra.*

The certificate of need statute, RCW 70.38.105(4) contains eight subsections that describe the types of changes made by a health care facility which would subject it to certificate of need review. The extension of services to include home health care brings two sections of RCW 70.38.105(4) into play. First, RCW 70.38.105(4)(a) provides that "[t]he construction, development, or other establishment of a new health care facility" is subject to CON review. Second, RCW 70.38.105(4)(g) provides that "[a]ny new institutional health services which are offered in or

through a health care facility, and which were not offered on a regular basis . . . within the twelve–month period prior to the time such services would be offered" are subject to CON review.

"Health care facility" is defined in RCW 70.38.025(7) as "hospices, hospitals, . . . nursing homes, kidney disease treatment centers, . . . and home health agencies . . ." "Institutional health services" is defined in RCW 70.38-.025(11) as "health services provided in or through health care facilities and entailing annual operating costs of at least five hundred thousand dollars . . ." "Health services" are defined in RCW 70.38.025(9) as "clinically related (i.e., preventive, diagnostic, curative, rehabilitative, or palliative) services".

■ The key to resolving the issue in these cases hinges on the interpretation of "new health care facility" because the parties are in agreement that the proposed services of each respondent do not exceed the $500,000 level of RCW 70.38.105(4)(g); therefore, the hospitals and nursing homes would not be subject to CON review under that subsection. We have already observed that "health care facility" is defined as a hospice, hospital, kidney disease treatment center, nursing home, or home health agency. The proposed services to be offered by the respondents qualify them as home health care agencies. Home health care agencies are defined in RCW 70.126.010(3) and (4) as agencies which provide home health care (services, supplies, medical equipment prescribed and supervised by the attending physician rendered to members in their homes when hospitalization would otherwise be required) and are certified by DSHS as home health care agencies.[1] Clearly, hospitals and nursing homes must become home health care agencies if they are to engage in home health care. This assumption of

---

[1]We apply the "home health care agency" definition found in RCW 70.126-.010(3) and (4) because it relates to the definition of "health care facility" defined by RCW 70.38.025(7). The two statutes relate to the same subject matter and must be considered as a whole. *See Beach v. Board of Adj., supra.*

an additional identity causes the existing hospital or nursing home to become a "new health care facility" within the meaning of RCW 70.38.105(4)(a). Consequently, the existing health care facility is subject to CON review before it can provide home health care services.

Our interpretation of "new health care facility" does not render RCW 70.38.105(4)(g) (new institutional health services) meaningless as the respondents contend.

A duly licensed nursing home or hospital, having satisfied the original CON review requirement, may choose to offer some but not all of the services it is licensed to provide. If management chooses to expand the services to include those services not previously offered, but which the nursing home or hospital is licensed to provide, a second application for CON review would not be required so long as the proposed services do not encompass those previously defined as constituting a "new health care facility" and do not exceed a $500,000 annual operating budget.

However, if the new services are essentially those of another facility such as a home health agency, hospice, or kidney disease treatment center, a second CON review is mandated by the statute.[2]

In sum, because the services offered by the hospitals and nursing homes in the cases before us are services that can only be supplied by a home health agency, and a home

---

[2]We are aware that the nursing home licensing statute authorizes nursing homes to provide "community–based" care. RCW 18.51.010(5) defines "community–based care" as

    (a) Home delivered nursing services;
    (b) Personal care;
    (c) Day care;
    (d) Nutritional services, both in–home and in a communal dining setting;
    (e) Habilitation care; and
    (f) Respite care.

However, in the Laws of 1983, ch. 236, § 3, the Legislature expressly provided that the expansion of the definition of "nursing home" to include "community–based care" was not intended to affect the provisions of RCW 70.38 (the certificate of need chapter). Therefore, we conclude that RCW 18.51.010(1) was not intended by the Legislature to be a grant of authority for the nursing homes to engage in home health care. The CON requirements must be satisfied.

health agency is a "new health care facility" as defined in RCW 70.38.025(7), we conclude that the trial judge erroneously granted summary judgments in favor of the respondents. Accordingly, we reverse the summary judgments in favor of the respondents, with the exception of Grays Harbor Community Hospital, and grant it in favor of the appellant, DSHS.

■ Our decision does not affect Grays Harbor Community Hospital because the State stipulated that Grays Harbor Community Hospital should be granted judgment allowing it to provide home health care without CON review. Further, the State stipulated that it would be permanently enjoined from requiring Grays Harbor to obtain CON review so long as Grays Harbor's annual operating cost for home health services did not exceed $536,000. A judgment by stipulation is construed as a contract between the parties which embodies the terms of the judgment. *Washington Asphalt Co. v. Harold Kaeser Co.,* 51 Wn.2d 89, 91, 316 P.2d 126, 69 A.L.R.2d 752 (1957). "It . . . operates to end all controversy between the parties, within the scope of the judgment. In the absence of fraud, mistake, or want of jurisdiction, a judgment by consent will not be reviewed on appeal." The State has not shown fraud, mistake, or want of jurisdiction. Therefore, the State's appeal regarding Grays Harbor Community Hospital will not be reviewed.

Judgments reversed.

REED, C.J., concurs.

ALEXANDER, J. (concurring)—I concur with the views expressed in the opinion of the court. I write this concurring opinion only because I want to emphasize that our decision in favor of the Department of Social and Health Services (DSHS) was not influenced by DSHS's political argument that the certificate of need procedure is good public policy. I feel constrained to express my absolute lack of reliance on this policy argument, rather than merely

ignoring it, because DSHS devoted such a great portion of its brief to the point.

DSHS contends that the certificate of need procedure was created as a device to control what it describes as "the runaway cost of health care." Frankly, even though I am not acquainted with all of the intricacies of the health care field, I am doubtful that the certificate of need procedure would reduce costs of home health care to consumers of these services. Common sense would suggest that the engrafting of a time consuming bureaucratic process upon an existing business actually increases the costs of doing business. Furthermore, the process appears calculated to reduce or limit competition in the home health care field. Unless I reject the commonly accepted view that competition ordinarily reduces costs to the consumer, I remain skeptical about DSHS's policy position, notwithstanding its reference to various studies and reports that ostensibly support its position. If the provision of home health care to the public required large capital expenditures, I might be more easily persuaded that a certificate of need procedure could be beneficial to consumers and to the public. However, no one disputes the fact that for existing health care facilities to enter the home health care field, the financial outlay is not very substantial.

However, regardless of how I may view DSHS's policy argument, the fact remains that the argument is totally irrelevant to the resolution of the issues before this court. As we have noted, our duty is to construe a statute adopted by the Legislature. We are not policy makers—that function belongs to the Legislature. In attempting to determine judicially the meaning of a statute, we may employ principles of statutory construction. We have done just that, and I believe we have divined the Legislature's intention. Whether a policy requiring certificates of need for existing health care facilities desiring to provide home health care is a good idea or bad one is not for us to decide. Good or bad, if it is the policy adopted by the Legislature, it must be followed. In my judgment, we have correctly concluded that

the policy adopted by the Legislature requires existing health care facilities to go through the certificate of need procedure. For that reason—and that reason alone—DSHS must prevail.

Reconsideration denied May 4, 1987.

Review denied by Supreme Court July 1, 1987.