[Nos. 39782-6-I; 39783-4-I. Division One. July 27, 1998.]

THE STATE OF WASHINGTON, *Appellant*, v. DONALD
MAYNARD YOKLEY, ET AL., *Respondents*.

774

*Norm Maleng, Prosecuting Attorney*, and *Raymon E. Thomas, Deputy*, for appellant.

*Charles D. Williams* and *Frederick O. Frohmader*, for respondents.

KENNEDY, C.J. — In January 1996, 8-year-old Anton Sirotin found a tennis ball in his brother's closet. The ball had been packed with explosive flash powder and equipped with a fuse. Anton thought colored paper or a prize would come out of the ball if he lit the fuse. When the ball exploded in the Sirotins' fireplace, it blew off Anton's left hand, imbedding his fingers and bones in the sheetrock and ceiling. The

force of the blast severely bent the iron fireplace grate and knocked framed pictures off the wall 10 feet away.

An investigation led to the discovery of two separate operations producing and selling large quantities of explosive items, including M-80s, M-100s, M-250s, 5-inch tube devices, and tennis ball bombs. One operation was conducted by appellants Donald and Penny Yokley,[1] who were charged with violations of the State Explosives Act.

The State seeks reversal of two pretrial orders resulting in the dismissal of all four counts against the Yokleys. One order suppressed evidence on the ground that a search warrant affidavit was facially insufficient.[2] The second order dismissed the two remaining counts against Donald Yokley on the grounds that the items in those counts were fireworks and were therefore either exempt from the Explosives Act, RCW 70.74, or chargeable only under the more specific Fireworks Laws. RCW 70.77.

For the reasons stated below, we reverse both rulings and remand for further proceedings.

## FACTS

Shortly after the January 1996 explosion that injured Anton, an investigator received information implicating Donald Yokley in explosives manufacturing and distribution. The investigator also received information from the Department of Labor and Industries that Donald Yokley did not possess a valid, current license to purchase, manufacture, use, transport, store or sell explosives or explosive devices.

In May 1996, an informant and undercover officer phoned Donald Yokley at his home and placed an order for 5,000 M-80s, 200 M-100s, 60 M-250s, 200 5-inch tube de-

---

[1] The tennis ball bomb that injured Anton was not made or sold by the Yokleys.

[2] The search warrant issue is addressed in the unpublished portion of our opinion.

vices, and a number of aerial launchers or mortars used for launching shells into the air. Yokley delivered those items to the undercover officer in a parking lot at the Northgate Mall.

Police subsequently obtained a warrant to search the Yokleys' apartment and vehicles. The search netted numerous explosive items, including M-250s and tennis ball bombs, as well as tools and materials used in manufacturing those items.

Based on the 5-inch tube devices and M-100s Donald delivered at the mall, the State charged him with two counts of "Explosive Devices Activity Without a License." The M-250s and tennis ball bombs found in the apartment resulted in two additional counts against Donald and Penny.

The defense moved to suppress the evidence seized at the apartment, arguing that the supporting affidavit failed to demonstrate probable cause to believe that the Yokleys were acting without an explosives license. The court granted the motion, effectively terminating the prosecution of the two counts arising from the apartment search.

The court and counsel spent considerable time discussing the effect of the exemption in the Explosives Act for "fireworks"[3] and the defense's contention that the items delivered by Donald were "fireworks." The prosecutor asserted, and the court ultimately agreed, that the exemption is an affirmative defense.

The parties disagreed on how the word "fireworks" in the Explosives Act exemption should be defined for the jury. The defense argued that since the word was not defined in the Act and was not ambiguous, it should be given its ordinary meaning. The prosecutor responded that the court had to look to the definitions of "fireworks" in the State Fireworks Law[4] and related provisions of the Washington Administrative Code.

---

[3]RCW 70.74.191(6) (formerly RCW 70.74.191(5)).

[4]RCW 70.77.126, .131, .136.

After extensive arguments, the court ultimately relied on the definitions in the Fireworks Law, but concluded that the items in this case were "fireworks" because they fit the description of "salutes" in the American Pyrotechnics Association (APA) standards for "display fireworks."[5] The APA standards were germane, the court explained, because the definition of "fireworks" in the Fireworks Law incorporates federal regulations by reference, which in turn incorporate the APA standards.

When asked to explain why he should not be required to amend the charge to a violation of the Fireworks Law, the prosecutor argued that the court was ignoring portions of the Fireworks Law defining "fireworks" in terms of their U.N. designation. The prosecutor further argued that "display fireworks" provide some special visual or audible effect which the items in this case do not provide.

The court adhered to its ruling and dismissed the remaining two counts against Donald. This appeal followed.[6]

## DECISION

 From the outset of this case, the parties' argu-

---

[5]The APA defines a display "salute" as a "[p]aper-wrapped or cardboard tube containing explosive composition in excess of 130 milligrams . . . . Upon ignition, noise and a flash of light are produced." APA Standard 87-1, § 4.1.2 (1993). Under section 2.6.2 of the APA standards, such "display" fireworks are "primarily intended for commercial displays[.]"

[6]The Yokleys point out that the State's brief contains no assignments of error, lists issues that are not argued in the body of the brief, and argues issues that are not listed in the "issues" section of the brief. The Yokleys contend these deficiencies warrant dismissal of the appeal. We disagree. Although a failure to set forth assignments of error and issues for each alleged error violates RAP 10.3(a)(3), courts will reach the merits if the issues are reasonably clear from the arguments in the brief, the opposing party has not been prejudiced, and this court has not been overly inconvenienced. *See generally State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995); *Heaverlo v. Keico Indus., Inc.*, 80 Wn. App. 724, 728, 911 P.2d 406 (1996). Here, the State's arguments clearly disclose the issues and assignments of error, the Yokleys have suffered no apparent prejudice, and the deficiencies are not a major inconvenience for this court. Dismissal is therefore inappropriate.

As for the State's failure to provide argument in support of several issues, the appropriate and sufficient remedy is refusal to review the issue, not dismissal. *See CTVC of Haw. Co. v. Shinawatra*, 82 Wn. App. 699, 706 n.2, 919 P.2d 1243 (1996), 932 P.2d 664, *review denied*, 131 Wn.2d 1020 (1997) (assignments of error not argued in brief are deemed abandoned). Hence, we will not address issues four and five in the "Issues Presented" section of the State's brief.

ments have revolved around one central issue: are the items delivered at Northgate and found at the Yokleys' apartment "fireworks" within the meaning of the "fireworks" exemption in the Explosives Act. If so, the Yokleys are exempt from prosecution under the Act. That issue was hotly contested and exhaustively argued in the proceedings below. Although the State's brief on appeal focuses more narrowly on whether the court properly ruled on the "fireworks" exemption as a matter of law, it is clear from the brief and oral argument in this court that the State contends the court erred in holding that the items in question are fireworks. Because that issue is implicitly raised and potentially dispositive, and because it presents an opportunity to provide needed guidance for future prosecutions of this nature, we will exercise our inherent power to address it.[7]

Whether the trial court correctly concluded that the items are exempt "fireworks" turns on how that word is defined. The Explosives Act contains no definition of the word.[8] As a general rule, an undefined statutory term is ac-

---

[7]*See generally Kramarevcky v. Department of Soc. & Health Servs.*, 122 Wn.2d 738, 751, 863 P.2d 535 (1993) (appellate courts have "inherent authority to consider issues which were not raised on appeal, or even at trial, if necessary for a proper decision."); *Harris v. Department of Labor & Indus.*, 120 Wn.2d 461, 468, 843 P.2d 1056 (1993). Additional briefing is unnecessary because the parties' positions are abundantly clear from the trial record and oral argument in this court.

[8]At oral argument, the Yokleys pointed out that the Explosives Act defines "pyrotechnic" as "any combustible or explosive compositions or manufactured articles designed and prepared for the purpose of producing audible or visible effects which are commonly referred to as fireworks." RCW 70.74.010(27). They argued that while not a definition of "fireworks", this definition nonetheless evidences the Legislature's intent to have a common meaning ascribed to the word "fireworks" in the exemption. But the definition of "pyrotechnic" was added to the Act in 1969 because the 1969 legislation also added a definition of "small arms ammunition" which used the word "pyrotechnic." RCW 70.74.010(28). Hence, the history of the definition betrays any link between the word "pyrotechnic" and the word "fireworks" in the Act. Furthermore, a difference in language normally evidences a different legislative intent. *In re Detention of Swanson*, 115 Wn.2d 21, 27, 793 P.2d 962 (1990); *State v. Alvarez*, 74 Wn. App. 250, 872 P.2d 1123 (1994), *aff'd*, 128 Wn.2d 1 (1995). The definition of "pyrotechnics" thus sheds little if any light on the meaning of the "fireworks" exemption.

corded its plain and ordinary meaning.[9] There are exceptions to this rule, however.

■ ■ Several decisions suggest that a court can always look to statutes "in pari materia" to determine if something other than the plain, unambiguous meaning of a term was intended by the Legislature.[10] Another exception allows courts to look to other sources of intent when the plain meaning of a term would lead to unlikely, absurd, or strained consequences.[11] Both exceptions apply here.

The first applies because the Explosives Act and the Fireworks Law both relate to explosive materials and devices and are, therefore, "in pari materia"—i.e., they relate to the same "thing" or "class of . . . things."[12] The second applies because "unlikely" or "absurd" consequences would result under the statutes in effect at the time of the trial court's ruling[13] if the ordinary definition of "fire-

---

[9]*State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992); *Martinelli & Co. v. Department of Revenue*, 80 Wn. App. 930, 912 P.2d 521, *review denied*, 130 Wn.2d 1004 (1996).

[10]*See State ex rel. Zbinden v. Superior Court*, 135 Wash. 458, 462-63, 240 P. 565 (1925); *State v. McDougal*, 120 Wn.2d at 351 (analyzing case under the "absurd consequences" exception but quoting rule rendering the plain meaning rule inapplicable where a party shows "either that some other section of the act expands or restricts [the provision's] meaning, that the provision itself is repugnant to the general purview of the act, *or that the act considered in pari materia with other acts*, or with the legislative history of the subject matter, *imports a different meaning*. If the language is plain, unambiguous and uncontrolled by other parts of the act *or other acts upon the same subject* the court cannot give it a different meaning") (quoting 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46.01 (4th ed. 1984)) (emphasis added); *Centennial Villas, Inc. v. Department of Soc. & Health Servs.*, 47 Wn. App. 42, 46, 733 P.2d 564 (1987). *But see State ex rel. Maleng v. Aukeen Dist. Court*, 31 Wn. App. 738, 740-41, 644 P.2d 745 (1982) (related statutes can be considered only when ambiguity is present); *Sayan v. United Servs. Auto. Ass'n*, 43 Wn. App. 148, 153, 716 P.2d 895 (1986) (accord); *Department of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 458-59, 645 P.2d 1076 (1982).

[11]*State v. McDougal*, 120 Wn.2d at 351.

[12]*In re Sage*, 21 Wn. App. 803, 808, 586 P.2d 1201 (1978) (quoting *State v. Houck*, 32 Wn.2d 681, 684-85, 203 P.2d 693 (1949). Statutes "in pari materia" are presumed to be "governed by one spirit or policy, and . . . intended to be consistent and harmonious in their several parts and provisions." *Id.*

[13]We express no opinion regarding the meaning of a 1997 amendment that makes it a misdemeanor under the Fireworks Law to "[k]nowingly manufacture,

works" advocated by the Yokleys applies. Under that definition, any explosive could be an exempt "firework" so long as it is designed and sold for "audible or visual effects." Conceivably, then, a powerful homemade explosive device designed for such effects would not only be an exempt "firework" under the Explosives Act, but, as demonstrated later in our discussion of the Fireworks Law, could also fall outside the scope of the "fireworks" definitions in the Fireworks Law. That such a device could be unregulated by either of those laws is an unlikely, if not absurd, result.

Hence, the plain meaning rule is inapplicable here and we may look to related statutes and other indicia of legislative intent.

■ ■ When the Explosive Act and the Fireworks Law are construed together, there is little doubt what the Legislature intended when it exempted "fireworks" from the Explosives Act. These are regulatory acts sharing the overlapping purpose of regulating the sale, possession, etc. of explosive substances through licensing requirements. The Explosives Act defines "explosives" broadly enough to potentially cover any firework "capable of producing destructive effects on contiguous objects or of destroying life or limb." RCW 70.74.010(3).[14] Hence, without a "fireworks" exemption, the schemes would overlap, causing duplicative regulation. The most reasonable reading of the "fireworks" exemption, therefore, is that it is intended to exempt from Explosive Act licensing requirements those items and activities that are already subject to licensing

---

import, transport, store, sell, or possess with intent to sell, as fireworks, explosives, as defined under RCW 70.74.010, that are not fireworks, as defined under this chapter" without licenses or permits required by the Fireworks Law. RCW 70.77.255(1)(d). This amendment was not cited by the parties and, in any event, was enacted after the conduct and rulings at issue here.

[14]The overlap between the two Acts is also demonstrated by the definitions of "fireworks" in the Fireworks Law, which state that fireworks contain "combustible or explosive" substances, RCW 70.77.126, and incorporate federal regulations defining fireworks, in part, by their explosives classification or composition. RCW 70.77.126, .131, .136; see also RCW 70.77.405.

under the Fireworks Law. This construction preserves the spirit and integrity of the statutory scheme.[15]

The legislative history of the exemption supports this construction. The original Explosives Act of 1931 included an exemption for "common fireworks which are to be used for celebration or commercial purposes."[16] The first Fireworks Law and statutory definition of "fireworks" appeared in 1943. It was repealed and replaced with new Fireworks Laws and definitions in 1951 and 1961.

In 1969, the Legislature, for the first time, amended the Explosives Act exemption for "fireworks." The Legislature repealed the 1931 exemption language quoted above and replaced it with language exempting "[t]he sale and use of fireworks[.]"[17] The express purpose of the 1969 amendatory Act was "to modernize the state explosives act" to keep pace with technological advancements occurring "since the original act was passed in 1931."[18] The sweeping amendments to the Act included new references to classifications of the United States Department of Transportation and other provisions generally updating the Act. In that context, the change in the "fireworks" exemption language is most reasonably viewed as an updating of the statute to reflect the Legislature's awareness that a Fireworks Law defining and regulating fireworks had come into existence since the passage of the original 1931 Explosives Act. Because of the Fireworks Law, the qualifying language in the original exemption was no longer necessary; it was sufficient to simply exempt "fireworks."

■ We turn, then, to the definitions of "fireworks" in

[15]The Yokleys argued below that under the rule of lenity, the "fireworks" exemption had to be construed in their favor. But that rule cannot be applied to obtain a result contrary to legislative intent. *In re Personal Restraint of Sietz*, 124 Wn.2d 645, 652, 880 P.2d 34 (1994); *State v. McKinley*, 84 Wn. App. 677, 687 n.2, 929 P.2d 1145 (1997). Because the statutory scheme and legislative history clearly evidence an intent to only exempt items already regulated by the Fireworks Law, the rule of lenity does not apply since its application would defeat the Legislature's intent.

[16]LAWS OF 1931, ch. 111, § 29(a).

[17]LAWS OF 1969, 1st Ex. Sess., ch. 137, § 5.

[18]LAWS OF 1969, 1st Ex. Sess., ch. 137, § 2.

the Fireworks Law to determine whether the items in this case are exempt "fireworks":

> "Fireworks" means any composition or device, in a finished state, containing any combustible or explosive substance for the purpose of producing a visible or audible effect by combustion, explosion, deflagration, or detonation, *and* classified as common or special fireworks by the United States bureau of explosives or contained in the regulations of the United States department of transportation *and* designated as U.N. 0335 1.3G or U.N. 0336 1.4G as of April 17, 1995.

RCW 70.77.126 (emphasis added).

> "Special Fireworks" means any fireworks designed primarily for exhibition display by producing visible or audible effects *and* classified as such by the United States bureau of explosives or in the regulations of the United States department of transportation *and* designated as U.N. 0335 1.3G as of April 17, 1995.

RCW 70.77.131 (emphasis added).

> "Common Fireworks" means any fireworks which are designed primarily for retail sale to the public during prescribed dates and which produce visual or audible effects through combustion *and* are classified as common fireworks by the United States bureau of explosives or in the regulations of the United States department of transportation *and* designated as U.N. 0336 1.4G as of April 17, 1995.

RCW 70.77.136 (emphasis added). Thus, to qualify as a "firework," a device must meet the general definition, be classified as "common" or "special" fireworks by the Bureau of Explosives or the United States Department of Transportation, and be "designated as U.N. 0335 1.3G" or "U.N. 0336 1.4G."

The United States Department of Transportation's regulations define "Common Fireworks"[19] and "Special Fireworks"[20] and incorporate by reference the standards of

---

[19] 49 C.F.R. 173.100(r).

[20] 49 C.F.R. 173.100(d).

the American Pyrotechnics Association.[21] The APA standards refer to "Common" fireworks as "Consumer" fireworks and describe them as "UN 0336" or "UN 0337."[22] The standards refer to "Special Fireworks" as "Display" fireworks and describe them as "UN 0335."[23] A third class of items is referred to as "Forbidden Explosive Devices" and is not assigned any UN number.[24]

The items in question here are neither "common" nor "special" fireworks under the applicable regulations and standards. They fall into none of the categories of items listed for "common" fireworks and contain explosive composition in excess of the limits for such fireworks.[25] They also are not "special" fireworks since there is no evidence they were intended or designed for "commercial" or "exhibition" displays.[26] On the other hand, the items meet the APA definition of "Forbidden Explosive Devices"—i.e., "Any explosive device *intended for sale to the public* that produces an audible effect . . . by a charge of *more than 130 milligrams (2 grains) of explosive composition* per report."[27]

The items are also not "fireworks" because they are not designated as either U.N. 0335 or 0336. "Forbidden explosive devices" are not approved by the United States Department of Transportation and have no UN designation. Moreover, the items were not labeled as U.N. 0335 or U.N. 0336.

[21]49 C.F.R. 171.7(a)(3).

[22]APA standards 2.6, 2.6.1.

[23]APA standards 2.6, 2.6.2.

[24]APA standards 2.6, 3.6.3.

[25]"Common Fireworks" are defined in part as "devices suitable for use by the public" containing no more than 2 grains (130 ml.) of pyrotechnic composition. 49 C.F.R. § 173.100(r). The trial court found the items in this case were display ."salutes" under the APA. Because a display "salute" under the APA contains "in excess of 130 milligrams" of explosive composition, it is clear that the trial court implicitly found the items contained more than 130 milligrams of explosive composition. That implicit finding is not challenged by either party.

[26]APA standards 2.6.2; RCW 70.77.131.

[27]APA standards 3.6.3 (emphasis added); *see* note 25, *supra.*

At oral argument, the Yokleys asserted that the items they possessed are "fireworks" because they can be sold to the public as such under RCW 70.77.401. That statute provides as follows:

> No *fireworks* may be sold or offered for sale *to the public as common fireworks* which are classified as sky rockets, or missile-type rockets, firecrackers, salutes, or chasers as defined by the United States department of transportation and the federal consumer products safety commission except as provided in RCW 70.77.311.

(Emphasis added.) This statute prohibits the sale of certain fireworks to the public except in limited circumstances described in RCW 70.77.311. It is plain from the wording of the statute that the exception allowing sale to the public applies only if the items being sold "as common fireworks" are "fireworks" of some sort—i.e., either common (also known as "consumer") or special (also known as "display") fireworks.[28] For example, a "salute" containing over 130 milligrams of explosive composition that is designed primarily for commercial displays is a "display" or "special" firework under the Fireworks Law, but it cannot be sold to the public as a "common" or "consumer" firework unless the criteria of RCW 70.77.311 are satisfied.

As discussed above, the items in question here do not qualify as either "display" or "common" fireworks; rather, they are "forbidden explosive devices."[29] Because they are not "fireworks," they are not eligible for sale "as common fireworks" under the exception referred to in RCW 70.77.401.

---

[28]The items listed in the statute were at one time classified as "special" fireworks under former RCW 70.77.131. The amended statutes now simply refer to the regulations of the United States Department of Transportation which, through incorporation of the APA standards, list "sky rockets," "missile-type rockets," "chasers" with no more than 50 milligrams of explosive composition, and "firecrackers" with no more than 130 milligrams of explosive composition as "common" or "consumer" fireworks. APA §§ 3.1.2.1, 3.1.2.2, 3.1.3.1, and 3.1.3.2. "Salutes" having "in excess of 130 milligrams" of explosive composition are classified as "display" fireworks.

[29]Similarly, the Consumer Products Safety Commission refers to the items as "banned hazardous substances." 16 C.F.R. § 1500.17.

In conclusion, because the items in question were not "fireworks," the trial court erred in ruling that they fell within the "fireworks" exemption, and that the State was required in any event to prosecute the Yokleys under the more specific Fireworks Laws.[30]

Reversed and remanded for proceedings consistent with this opinion. The remainder of this opinion will not be published but will instead be filed for public record pursuant to RCW 2.06.040.

GROSSE and BECKER, JJ., concur.

---

[30]We note that counsel in a related case raised the question, which we need not reach, of whether the Explosives Act "fireworks" exemption applies when, as here, the defendants are charged not only with the possession and sale of explosives, but also with their manufacture and storage. The statute exempts only the "importation, sale, possession, and use of fireworks[.]" RCW 70.74.191(6).