IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 38709-7-III |
| JENNY LYNN VECA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| AARON KEYES PRICHARD, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — Jenny Veca appeals an order finding her in contempt of her

and Aaron Prichard's parenting plan, by failing to permit their children to travel to the

Tri-Cities for visitation with their father. She contends that (1) her purported

contemptible conduct followed Mr. Prichard's failure to abide by his responsibilities

under the parenting plan, and (2) in finding that she did not make reasonable efforts to

communicate an acceptable travel schedule for the children, the trial court imposed a

burden on her not provided by the parenting plan.

Her first argument is not supported by the record. Her second argument

misapprehends the trial court's decision. We affirm and award Mr. Prichard reasonable

attorney fees and costs on appeal.

FACTS AND PROCEDURAL BACKGROUND

Jenny Veca and Aaron Prichard are parents of a son and daughter, who we infer are now 13 and 10 based on their ages at the time of entry of the parties' 2017 parenting plan. The parenting plan provides that the children reside with Ms. Veca in Henderson, Nevada, except when they are scheduled to reside with Mr. Prichard, who lives in the Tri-Cities.

At the time of the conduct of Ms. Veca that is alleged to have violated the parenting plan, it stated:

> Father shall have visitation one weekend per month in either Henderson, Nevada or in Tri-Cities, Washington, at Father's choice. If there is school holiday or long weekend during the month, Father shall have that weekend unless Father chooses otherwise. Father must inform Mother by the first day of the preceding month before the visit of his choice. If he fails to inform Mother in time, the default weekend shall be the third weekend of the month in Henderson, Nevada.
>
> > For long weekends, visitation shall begin with the first flight the same day the children are released from school until the day before school resumes at 6:00 p.m. Pacific Standard Time, or the closest flight that leaves Pasco at 6:00 p.m.
> >
> > For regular weekends, visitation shall begin with the first flight on Friday after the children are released from school until Sunday at 6:00 p.m. Pacific Standard Time, or the closet flight that leaves Pasco at 6:00 p.m.

Clerk's Papers (CP) at 65.

In November 2021, Mr. Prichard filed a motion for contempt in which he alleged that Ms. Veca had violated the parenting plan by failing to arrange for the children to travel to the Tri-Cities for his requested visitation on the weekend of September 24 to 26,

2021. He supported his motion with correspondence between the parties' lawyers in which Ms. Veca's lawyer took the position that the dates proposed "interfere with the children's schooling" and stated Mr. Prichard "needs to provide additional proposed dates that coincide and do not interfere with the school schedule." CP at 24.

A declaration from Ms. Veca in opposition to the contempt motion claimed that Mr. Prichard proposed only noncompliant Thursday to Saturday or Friday to Monday flight schedules. But the evidence of the parents' and lawyers' communications reveals that Mr. Prichard offered Ms. Veca a Friday to Sunday visit or a Friday to Monday alternative, "whichever is easiest for you." CP at 117. Ms. Veca's remaining complaint was that Mr. Prichard "proposed flight times where the children would be returning to Las Vegas at 11:30 p.m. That is not realistic for two young children." CP at 43.

Mr. Prichard's lawyer acknowledged in an August 10, 2021 letter to Ms. Veca's lawyer that one of the flight schedules proposed by his client was a Friday to Monday schedule. But he pointed out that the other was a Friday to Sunday schedule that would not require the children to miss school.

Ms. Veca took no steps to get the children to the Tri-Cities for the weekend visitation requested by Mr. Prichard. Prior to the December hearing on the motion for contempt, Mr. Prichard submitted a declaration in which he testified that Ms. Veca had failed to send the children for their October and November visits as well.

At the hearing on the contempt motion, Mr. Prichard's lawyer argued that the parenting plan gave Ms. Veca no authority to unilaterally deny visitation on the basis that an otherwise compliant return flight would arrive in Las Vegas too late. He repeatedly pointed out to Judge David Peterson, who was hearing the motion, that Judge Bruce Spanner, the by-then-retired judge who had entered the parenting plan, characterized Ms. Veca as an obstructionist who repeatedly blocked Mr. Prichard's visitation and Skype calls with the children.

Ms. Veca's lawyer protested that the times were objectionable and there were direct flights from Pasco to Las Vegas that did not require the connection at SeaTac that made the Sunday return flight so late. He argued that if an acceptable flight could not be found, Mr. Prichard should visit Henderson on his default, third weekend of the month.

In rebuttal, Mr. Prichard's lawyer told the court there were limited flight options. He represented that of the two airlines that were possibilities, Allegiant had direct flights, but did not have a flight on Sunday. This was supported by a print-out of the proposed Allegiant flights that were exchanged in the lawyers' correspondence. *See* CP at 19 (showing "No Flights" for Sunday, September 26). He pointed out that Ms. Veca had rejected the Allegiant option. Alaska had flights on both Friday and Sunday but its flight to Las Vegas was not direct, hence the late arrival. He argued that Ms. Veca had not demonstrated that there was a more reasonable compliant flight and she did not have the right to deny a compliant visitation proposal without proposing alternatives.

4

The trial court found Ms. Veca in contempt. It ordered her to pay a $100 civil penalty and $1,100 in attorney fees and costs. Its order modified Mr. Prichard's proposed finding that Ms. Veca "continues to deny father's visitation despite the fact that she ha[d] been found in contempt for this issue," substituting a finding that Ms. Veca "did not make reasonable efforts to communicate an alternate [visitation] plan." CP at 59. It found that her failure to obey the parenting plan was in bad faith. The court informed the parties that it had taken time to review some of the prior proceedings and had seen Judge Spanner's references to "the parties' attitudes," but since he was now taking on the case, it would be with "a fresh start." Report of Proceedings (RP) at 27.[1] It concluded by ordering Ms. Veca to facilitate the winter break visit and emphasizing its faith in her ability to follow future directives.

On December 23, 2021, Ms. Veca moved for reconsideration, claiming for the first time that Mr. Prichard did not make a timely request for the September visit. The trial court denied the motion. Ms. Veca appeals.

ANALYSIS

RCW 26.09.184(7) provides that "[f]ailure to comply with a provision in a parenting plan . . . may result in a finding of contempt of court, under RCW 26.09.160."

---

[1] The matter appears to have been assigned to Judge Peterson based on Judge Spanner's directive in the parenting plan that any legal action by Ms. Veca that would interfere with Mr. Prichard's visitation "must only be submitted to Judge Bruce Spanner, or his successor as pre-assigned judge." CP at 90; *and see* RP at 4-7 (discussing the directive). Judge Petersen is Judge Spanner's successor on the Superior Court bench.

If, after a hearing, the court determines that a parent "in bad faith, has not complied with the order establishing residential provisions for the child, the court *shall* find the parent in contempt." RCW 26.09.160(2)(b) (emphasis added). Parents are presumed to have the present ability to comply with residential provisions of a parenting plan unless they establish a reasonable excuse for noncompliance by a preponderance of the evidence. RCW 26.09.160(4). On finding a noncomplying parent in contempt, the court shall order the noncomplying parent to give the moving party makeup time with the child, pay the moving party's court costs and reasonable attorney fees, and pay a civil penalty of not less than $100. RCW 26.09.160(2)(b). We review a contempt order for abuse of discretion. *In re Marriage of Lesinski & Mienko*, 21 Wn. App. 2d 501, 514, 506 P.3d 1277 (2022).

Appellant's opening brief does not make assignments of error and identifies only one issue presented for review: "Can a party be found in contempt when the other party has not followed the strict terms of the order?" Am. Br. of Appellant at 4.[2] Ms. Veca

---

[2] RAP 10.3(a)(4) requires an appellant's brief to include "[a] separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." We will sometimes decline to consider an alleged error that we are forced to discern from argument. The two errors we perceive as alleged in this appeal were easily identified. We prefer to reach the merits of a case. *See* RAP 1.2(a) ("These rules will be liberally interpreted to . . . facilitate the decision of cases on the merits."); *see also*, *e.g.*, *State v. Yokley*, 91 Wn. App. 773, 777 n.6, 959 P.2d 694 (1998) ("Although a failure to set forth assignments of error and issues for each alleged error violates RAP 10.3(a)(3), courts will reach the merits if the issues are

argues that Mr. Prichard was required by the parenting plan to request a September

weekend by August 1 and failed to do so until August 9. *Id.* at 6. She argues that her

obligations under the plan were "contingent" on Mr. Prichard abiding by his. *Id.* at 8.

Elsewhere in her brief, Ms. Veca raises an additional issue: whether the trial court

enforced an obligation not imposed by the parenting plan given its finding that she did

not make reasonable efforts to communicate an alternate plan. *Id.* at 5. She cites *In re*

*Marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995), for the

proposition that contempt requires a clear violation of a strictly construed order.

Ms. Veca's argument that Mr. Prichard did not request the September 24 to 26

weekend until August 9 is belied by the record. While August 9 is the date on which the

parties' lawyers corresponded, the evidentiary submissions never suggest that Mr.

Prichard had not conveyed his request to Ms. Veca earlier. Mr. Prichard's opening

declaration treated it as a given that he had made a compliant request. *See* CP at 13-15.

His lawyer's August 9 correspondence to opposing counsel states that the information on

the flights being proposed "was initially communicated in July." CP at 17. Ms. Veca's

lawyer's August 9 letter to Mr. Prichard's lawyer attaches "text messages . . . exchanged

between the parties," and shows a date of either July 30 or August 1 (either of which

would be compliant) for the following text to Ms. Veca from Mr. Prichard:

---

reasonably clear from the arguments in the brief, the opposing party has not been
prejudiced, and this court has not been overly inconvenienced.").

> For September, let's plan on the kids coming that last weekend of the month. They can come on the evening of Friday the 24th, and return that Sunday night or Monday morning, whichever is easiest for you.

CP at 25. Ms. Veca's declaration filed in opposition to the contempt motion does not assert that Mr. Prichard failed to request the September 24-26 weekend on or before August 1. The trial court reasonably rejected the argument that Mr. Prichard's request was untimely.[3]

As for Ms. Veca's second argument, the parenting plan does not require either party to propose alternatives if Ms. Veca receives a compliant proposal from Mr. Prichard that she finds objectionable. As Mr. Prichard reasonably anticipated, however, a trial court might well find that Ms. Veca had "a reasonable excuse" for noncompliance under RCW 26.09.160(4) if she had identified a feasible alternative. Everyone agreed at the contempt hearing that having the children arrive home near midnight the day before a school day was undesirable. But given flight schedules, the alternative was an undesirable diminution of Mr. Prichard's already-limited visitation time. We construe the court's order as explaining its reason for rejecting Ms. Veca's excuse, not as imposing a new obligation not identified in the parenting plan.

---

[3] The claim of an untimely request was first made in a motion for reconsideration that falsely characterized the parenting plan as requiring notice "*before* the first day of the preceding month." CP at 76 (emphasis added).

No. 38709-7-III
*Veca v. Prichard*


*Attorney fees*

Both parties request an award of attorney fees. Ms. Veca relies on RCW 26.09.160(7), which applies where the moving party did not have a reasonable basis for its contempt motion. Mr. Prichard had a reasonable basis for his motion.

Mr. Prichard relies on RCW 26.09.160(2)(b)(ii), which provides that a court "shall" order a parent found in contempt to pay reasonable attorney fees and court costs to the moving party. The mandate to award reasonable attorney fees and costs extends to fees and costs incurred on appeal. *In re Marriage of Rideout*, 150 Wn.2d 337, 359, 77 P.3d 1174 (2003). We award Mr. Prichard his reasonable attorney fees and costs on appeal subject to his timely compliance with RAP 18.1(d).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____          _____
Fearing, J.                                                    Staab, J.

9