[Nos. 67183-4; 67214-8. En Banc.]

Argued May 20, 1999.    Decided December 2, 1999.

*In the Matter of the Personal Restraint of* Andrew Yim, et al., *Petitioners.*

The State of Washington, *Respondent,* v. Donald Maynard Yokley, et al., *Petitioners.*

*Frederick O. Frohmader* and *Charles D. Williams* .for petitioners Yim and Samphao.

*Frederick O. Frohmader*; *Allen, Hansen & Maybrown, P.S.*, by *Todd Maybrown*; and *Charles D. Williams*, for petitioners Donald and Penny Yokley.

*Norm Maleng, Prosecuting Attorney*, and *Charles W. Lind* and *James M. Whisman, Deputies*, for respondent.

ALEXANDER, J. — Andrew Yim and Deng Samphao each pleaded guilty to several violations of a provision of the Washington State explosives act, RCW 70.74 (Explosives Act). They later moved to withdraw their pleas, contending that the items they possessed and sold without a license were "fireworks" and, therefore, exempted from the Explosives Act. The Court of Appeals, considering their motions as personal restraint petitions, denied their request for relief. Yim and Samphao then petitioned this court for review and we granted it.

Donald and Penny Yokley were similarly charged with several violations of the Explosives Act. Before trial, they moved to suppress evidence seized from their home pursuant to a search warrant, alleging that the affidavit in support of the warrant did not establish probable cause for issuance of a warrant. The Yokleys also moved to dismiss all of the charges against them on the grounds that the items they possessed and sold were fireworks and thus exempted from the Explosives Act. The trial court granted their motions and entered orders suppressing evidence and dismissing the charges against them. The State appealed to the Court of Appeals, which reversed the trial court's orders. The Yokleys petitioned this court for review and we granted their request and consolidated their appeal with that of Yim and Samphao's. We affirm the Court of Appeals in both cases.

## I. FACTS
### A. *In re Personal Restraints of Yim and Samphao*

In 1996, the King County police seized more than 40,000 "M-80s," nearly 200 tennis balls filled with "flash powder," and materials for manufacturing those devices from Andrew Yim and Deng Samphao. The State thereafter charged Yim and Samphao with several violations of the Explosives Act.[1] Yim ultimately pleaded guilty to three

---

[1]The Explosives Act provides that "[i]t is unlawful for any person to manufacture, purchase, sell, offer for sale, use, possess, transport, or store any explosive, improvised device, or components that are intended to be assembled into an explosive or improvised device without having a validly issued license from the department of labor and industries, which license has not been revoked or suspended. Violation of this section is a class C felony." RCW 70.74.022(1). RCW 70.74.010(3) broadly defines an "explosive" to include "any chemical compound or mechanical mixture that is commonly used or intended for the purpose of producing an explosion, that . . . may cause such a sudden generation of highly heated gases that the resultant gaseous pressures are capable of producing destructive effects on contiguous objects or of destroying life or limb. In addition, the term 'explosives' shall include all material which is classified as class A, class B, and class C explosives by the federal department of transportation."

violations[2] of RCW 70.74.022 and Samphao pleaded guilty to two charges that he violated the same statute. Yim and Samphao were each sentenced to less than 60 months in prison. Almost a year later, they sought to withdraw their guilty pleas, alleging that the items they admitted manufacturing, possessing, and selling were "fireworks" and, therefore, exempt from the Explosives Act.

The superior court, pursuant to CrR 7.8(c)(2), transferred Yim and Samphao's motions to the Court of Appeals to be considered as personal restraint petitions (PRPs).[3] The Court of Appeals denied Yim and Samphao's petitions, concluding that they failed to show that their pleas were invalid or that their attorneys were deficient.[4] Yim and Samphao petitioned this court for review and we granted their petition and, as previously noted, consolidated the case with *State v. Yokley*, No. 39782-6-I (Wash. Ct. App. July 27, 1998).

## B. *State v. Yokley*

Also in 1996, the King County Police Department received information that Donald Yokley was manufacturing and selling explosive devices known as "M-80s," "M-100s," and "M-250s." This led to an undercover police officer buying a large amount of such items from Yokley at the Northgate Mall. Police officers then arrested Yokley and obtained a warrant to search the home he shared with his wife, Penny, as well as their two vehicles. In the home, the officers found what they allege were explosive devices. Yokley was then charged individually with two violations of

---

[2]The trial court later dismissed one of the counts, notwithstanding the fact that Yim had pleaded guilty to that count.

[3]The Court of Appeals consolidated Yim's and Samphao's PRPs.

[4]Yim and Samphao moved for reconsideration of the Court of Appeals' decision. The Court of Appeals granted the motion for reconsideration and linked the case with *State v. Yokley*, No. 39782-6-I (Wash. Ct. App. July 27, 1998). The court, however, after "consider[ing] the parties' supplemental briefs and oral arguments, . . . adhere[d] to [its] original decision." *In re Personal Restraints of Samphao and Yim*, Order on Recons., No. 40760-1-I (Wash. Ct. App. July 27, 1998).

the Explosives Act (counts I and II). The State also charged Donald Yokley and Penny Yokley with two additional counts (III and IV) based on the seizure from their residence of explosive devices described as "M-250s" and " 'tennis ball bombs.' " Clerk's Papers (CP) at 3.

The Yokleys moved before trial to suppress the evidence found in their home, contending that the affidavit in support of the search warrant failed to establish probable cause for issuance of the warrant because it did not aver that the Yokleys did not have an explosives license. After hearing argument from counsel and testimony regarding the events leading up to and through the search of the Yokleys' home and vehicles, the trial court granted the suppression motion and concluded, following entry of findings of fact, "that the practical effect of this order is to terminate the prosecution of counts III and IV against Defendants Donald and Penny Yokley." CP at 52.

The Yokleys also moved, prior to trial, to dismiss the charges against them contending that the items that they possessed and sold were "fireworks" and thus exempted from the Explosives Act.[5] The trial court, in response to this motion, solicited information from the prosecution and defense counsel regarding the definitions of "fireworks" and "explosives" as they relate to the Washington State Fireworks Law, RCW 70.77 (Fireworks Law) and the Explosives Act. In addition, the court permitted Sid Woodcock, an explosives expert, to testify in order to assist it in formulating a definition of "fireworks." At the conclusion of this hearing, the trial court found that the items that the Yokleys possessed and sold were "fireworks." Accordingly, it granted the Yokleys' motion to dismiss the charges against them on grounds that the items that they possessed and sold were exempt from the Explosives Act. It

---

[5]RCW 70.74.191(6) provides:

"The laws contained in this chapter and regulations prescribed by the department of labor and industries pursuant to this chapter shall not apply to:

". . . .

"(6) The importation, sale, possession, and use of fireworks, signaling devices, flares, fuses, and torpedoes."

then entered an order dismissing all of the charges on that basis.

The State appealed the suppression and dismissal orders to Division One of the Court of Appeals. The State argued there that "the trial court erred in invalidating the search warrant" and that "the trial court improperly invaded the province of the jury by holding that the seized devices were 'fireworks.' " Br. of Appellant, No. 67214-8, at 28, 36. The Court of Appeals determined that probable cause existed for issuance of the search warrant and that the warrant was, therefore, valid. It also concluded the trial court erred in ruling that the explosive devices in question fell within the " 'fireworks' exemption" to the Explosives Act. *State v. Yokley*, 91 Wn. App. 773, 785, 959 P.2d 694 (1998). Accordingly, it reversed the trial court's suppression and dismissal orders. The Yokleys petitioned this court for review and we granted it and consolidated their appeal with *In re Personal Restraints of Yim and Samphao*.

## II. ANALYSIS
### A. *In re Personal Restraints of Yim and Samphao*
### 1. Samphao's Plea

Samphao asserts that the Court of Appeals erred in concluding that he could not withdraw his plea of guilty to the two charges that he unlawfully possessed, manufactured, stored, and transported explosive devices in violation of RCW 70.74. He claims that his right to due process would be violated if he is not permitted to withdraw his guilty pleas. In support of this contention, he argues that he was misled as to the consequences of his pleas in that "the Prosecutor, Court and Counsel all represented to [him] that [he] would . . . no[t be] deport[ed] absent a 60 month sentence."[6] Pet. for Review, No. 67183-4, at 11. Even assuming that Samphao could be deported as a consequence

---

[6]The record indicates that Samphao's deportation hearing was scheduled for March 11, 1997. The record does not, however, indicate the outcome of that hearing, if indeed it was held.

of guilty pleas that resulted in a sentence of less than 60 months in prison, he did not establish that the Court of Appeals erred in holding that he could not withdraw his pleas.

■ Pursuant to CrR 4.2(f), "[t]he court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." *See also State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991). We have observed, though, that "CrR 4.2(f) imposes a demanding standard on a defendant who seeks to withdraw a guilty plea." *Saas*, 118 Wn.2d at 42.

In evaluating Samphao's claim, we note that a deportation proceeding that occurs subsequent to the entry of a guilty plea is merely a collateral consequence of that plea. *See State v. Ward*, 123 Wn.2d 488, 512-13, 869 P.2d 1062 (1994); *State v. Malik*, 37 Wn. App. 414, 416, 680 P.2d 770 (1984). Accordingly, Samphao need not have been advised of the possibility of deportation. *Fruchtman v. Kenton*, 531 F.2d 946, 948-49 (9th Cir. 1976); *Ward*, 123 Wn.2d at 512; *Malik*, 37 Wn. App. at 416-17. Samphao's complaint is not, however, that he was not advised of the possibility of deportation. Rather he claims that he was affirmatively misled to believe that he would not be deported. While an affirmative misrepresentation to a defendant regarding the possibility of deportation might constitute a "manifest injustice" and, thus, provide a basis for setting aside a guilty plea, the record demonstrates that there was no such misrepresentation here.

In reaching that determination, we note that when Samphao entered his pleas of guilty the following exchange took place between the trial court, Samphao, Ms. Ramey (Samphao's attorney), and Mr. Thomas (the deputy prosecutor):

Q: [THE COURT] You understand that if you are not a citizen of the United States the fact that you have pled guilty to these offenses *may subject you to deportation*, denial of naturalization, and also exclusion from the United States? Do you understand that?

A: [SAMPHAO] *Yes, I do*.

MR. THOMAS: Your honor, excuse me. Ms. Ramey does inform me that Mr. Samphao is not a citizen.

THE COURT: And I have indicated—

MS. RAMEY: That's correct. He just said that.

MR. THOMAS: Oh, I'm sorry.

*In re Personal Restraint of Samphao*, Mot. for Emergency Orders, No. 40760-1-I, app. 1, ex. 5, at 14 (emphasis added). Later, at sentencing, the following colloquy took place between Samphao's attorney, the prosecutor, and the sentencing judge:

THE COURT: . . . Your client, you are alleging to me your client is a legal resident alien?

MS. RAMEY: Yes, he is.

THE COURT: With a green card?

MS. RAMEY: Yes.

THE COURT: I have been led to believe unless he gets 60 months or more he is not deportable.

MR. THOMAS: I believe that is correct, Your Honor.

MS. RAMEY: I have not—

THE COURT: I sentenced somebody to manslaughter recently with a green card, a Laotian, and that is what the attorney told me.

MS. RAMEY: I know there has been some recent changes and I have not read the statute yet. Mr. Samphao would also like to address the Court.

*In re Personal Restraint of Samphao*, Mot. for Emergency Orders, No. 40760-1-I, app. 1, ex. 4, at 43.

Samphao contends that the latter exchange between the court, his attorney, and the prosecutor demonstrates that the consequences of his guilty pleas were misrepresented to him. We disagree. The exchange that occurred at sentenc-

ing does not detract from the fact that Samphao was advised when he pleaded guilty that there was a risk of deportation. Despite that knowledge, he voluntarily entered his pleas of guilty. *See State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996) (holding that a guilty plea, which is voluntarily, intelligently, and knowingly made, is valid).

The exchange that occurred at sentencing merely demonstrates that there may have been some confusion on the part of the sentencing judge[7] and the prosecutor as to whether Samphao's plea would subject him to deportation. That, in our view, does not undermine the validity of the earlier pleas.

Samphao, in short, has failed to establish that the Court of Appeals erred in concluding that it was not manifestly unjust to refuse to allow him to withdraw his guilty pleas. Accordingly, we affirm the Court of Appeals insofar as it determined that Samphao was not denied due process of law as a result of alleged misrepresentations made to him regarding the consequences of his guilty pleas.

## 2. *Ineffective Assistance of Counsel*

■ Yim and Samphao both assert that they pleaded guilty without knowing that the explosive items which they possessed and sold were "fireworks" and, thus, exempt from the Explosives Act by virtue of former RCW 70.74.191(5), which provided that the "laws contained in [the Explosives Act] . . . shall not apply to: . . . . The importation, sale, possession, and use of fireworks."[8] They suggest that their attorneys were deficient in not so advising them and that, as a consequence, they were denied effective assistance of counsel. Because Yim and Samphao raised this issue in a PRP, they have the burden on an alleged constitutional error to show "actual prejudice." *In re*

---

[7]The sentencing judge was not the same judge who presided at the hearing at which Samphao entered his pleas of guilty.

[8]This exemption is identical to the now effective version, RCW 70.74.191(6). LAWS OF 1998, ch. 40, § 1 inserted subsection (5) and renumbered following subsections accordingly.

*Personal Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990).

The validity of Yim and Samphao's claim turns on whether they have established, as they assert, that the items they manufactured and possessed were "fireworks." At the outset, we observe that their statements to the court at the time they entered their pleas do not support their assertion. In his statement on plea of guilty, Yim merely stated that on "12-24-95 and 3-7-96, I participated in unlawfully manufacturing [and] possessing explosive devices [without] having a validly issued [and] current license from the [Department] of Labor and Industries." State's Resp. to PRP, No. 67183-4, app. A, at 6. Samphao similarly stated that on "March 7, 1996 . . . I unlawfully possessed[,] manufactured, stored[,] and transported explosive devices to-wit: M-80s and tennis ball bombs without a valid and current license from the [Department] of Labor [and] Industries." State's Resp. to PRP, No. 67183-4, app. B, at 6.

The Court of Appeals did not, however, deny relief to Yim and Samphao solely on the basis of the statements they made to the trial court at the time they entered their guilty pleas. It went on to hold that "the arguments presented [by Yim and Samphao] are insufficient to establish that the devices in question were fireworks." *In re Personal Restraints of Samphao and Yim*, No. 40760-1-I, slip op. at 5 (Wash. Ct. App. Oct. 27, 1997). It reached that conclusion because it determined that Yim and Samphao "fail[ed] to show that the [explosive] devices in this case meet the classification and designation criteria" to fall within the definition of "fireworks." *Samphao*, slip op. at 4.

■ In reviewing this determination, we begin by noting that, as the Court of Appeals held in *Yokley*, 91 Wn. App. at 780-81, the most reasonable reading of the Explosives Act and the Fireworks Law is that the only explosive items and activities that are exempt from the Explosives Act, under the "fireworks" exemption, are those items and activities which are regulated under the Fireworks Law. This holding is reasonable because the Fireworks Law and the Explosives

Act, which both govern the manufacture, purchase, sale, possession, transportation, et cetera, of potentially dangerous explosive devices, stand in pari materia due to the fact that they "relate to the same person or thing, or the same class of persons or things." *State v. Houck*, 32 Wn.2d 681, 684, 203 P.2d 693 (1949). The significance of statutes being in pari materia is that they "must be construed together. . . . and in construing [them] . . . all acts relating to the same subject matter or having the same purpose, should be read in connection therewith as together constituting one law." *Houck*, 32 Wn.2d at 684-85; *see also Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 630, 869 P.2d 1034 (1994) (stating that this court will read statutes that are relating to the same subject "as complementary, rather than in conflict with each other"); *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974) ("In ascertaining legislative purpose, statutes which stand in pari materia are to be read together as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes."). Accordingly, in order for Yim and Samphao to successfully maintain their claim, they must establish that the explosive items that they manufactured and sold were "fireworks," as defined by the Fireworks Law, and thus exempt from the Explosives Act.

The Fireworks Law defines "fireworks" as:

[A]ny composition or device, in a finished state, containing any combustible or explosive substance for the purpose of producing a visible or audible effect by combustion, explosion, deflagration, or detonation, *and classified* as common or special fireworks[9] by the United States bureau of explosives or contained in the regulations of the United States department

---

[9] A "special firework" is any firework "designed primarily for exhibition display by producing visible or audible effects and classified as such by the United States bureau of explosives or in the regulations of the United States department of transportation [DOT] and designated as U.N. 0335 1.3G as of April 17, 1995." RCW 70.77.131. A "common firework" is any fireworks which are "designed primarily for retail sale to the public during prescribed dates and which produce visual or audible effects through combustion and are classified as common fireworks by the United States bureau of explosives or in the regulations of the United

of transportation and designated as U.N. 0335 1.3G or U.N. 0336 1.4G as of April 17, 1995.

RCW 70.77.126 (emphasis added). In addition, RCW 70.77.236(2) mandates that

> The chief of the Washington state patrol through the director of fire protection *shall classify* any new fireworks item[10] in the same manner as the item is classified by the United States bureau of explosives or in the regulations of the United States department of transportation, unless the chief of the Washington state patrol through the director of fire protection determines, stating reasonable grounds, that the item should not be so classified.

(Emphasis added.)

Pursuant to RCW 70.77.126 and 70.77.236, in order for an explosive device to qualify as a "firework" it *must have been classified* by the appropriate federal or state government officials. Yim and Samphao have failed to allege, much less establish, in their submissions to this court that the explosive items which they possessed, manufactured, and sold were classified *in any manner whatsoever.* We believe, therefore, that the Court of Appeals correctly determined that Yim and Samphao failed to establish that the explosive items at issue were "fireworks" within the meaning of the "fireworks exemption" of the Explosives Act. Accordingly, we affirm its holding that there is no basis for finding

States department of transportation and designated as U.N. 0336 1.4G as of April 17, 1995." RCW 70.77.136.

In December 1990, the DOT partially revised its classification system and stopped classifying fireworks as "special" or "common." *See* Definitions, Classification and Packaging for Class, 55 Fed. Reg. 52617-21 (1990). The DOT now simply defines fireworks as "[p]yrotechnic articles designed for entertainment." 49 C.F.R. § 173.59; *see also* Supplemental Br. of Resp't, No. 67183-4, app. B, at 412. The American Pyrotechnical Association (APA) Standard 87-1, however, refers to the fireworks formerly classified as "common" as "consumer fireworks" and it refers to the fireworks formerly classified as "special" as "display fireworks." Supplemental Br. of Resp't, No. 67183-4, app. C, at 1, 2.

[10]A "new fireworks item" is "any fireworks initially classified or reclassified as special or common fireworks by the United States bureau of explosives or in the regulations of the United States department of transportation after April 17, 1995." RCW 70.77.236(1).

deficient performance on behalf of Yim and Samphao's trial attorneys.

### B. *State v. Yokley*
### 1. The Search Warrant

The Yokleys assert that the Court of Appeals erred when it reversed the trial court's holding that the affidavit presented in support of the search warrant for their home and vehicles failed to establish probable cause for the issuance of the warrant.[11] Specifically, the Yokleys contend that "this Court should conclude that the search warrant affidavit did not establish probable cause because it contained no indication that Donald Yokley had no license to possess or sell fireworks or explosives." Supplemental Mem. of Donald and Penny Yokley at 4. The State responds that we should affirm the Court of Appeals because "[t]he trial court erred in invalidating the search warrant since the issuing magistrate was presented with sufficient and current information which reasonably established the probability that the defendant's residence was involved in criminal activity." Br. of Appellant, No. 67214-8, at 28.

██ ██ A search warrant may be issued

> only upon a determination of probable cause, based upon facts and circumstances sufficient to establish a reasonable inference that criminal activity is occurring or that contraband exists at a certain location. Probable cause exists when an affidavit supporting a search warrant sets forth facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity.

*State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995) (citations omitted). Further, "[i]t is only the probability of criminal activity and not a prima facie showing of it which

---

[11]U.S. CONST. amend. IV mandates that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

governs the standard of probable cause." *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981).

A "magistrate's determination that a warrant should issue is an exercise of judicial discretion that is reviewed for *abuse of discretion*.[12] This determination generally should be given *great deference* by a reviewing court." *Cole*, 128 Wn.2d at 286 (emphasis added) (citation omitted); *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994) ("Generally, the probable cause determination of the issuing judge is given great deference."); *Seagull*, 95 Wn.2d at 907 ("The determination of probable cause should be given great deference by reviewing courts."). Moreover, we have repeatedly held that not only will a magistrate's determination that probable cause exists be accorded considerable deference, but "doubts as to the existence of probable cause [will be] *resolved in favor of the warrant*." *State v. J-R Distribs., Inc.*, 111 Wn.2d 764, 774, 765 P.2d 281 (1988) (emphasis added); *see also Cole*, 128 Wn.2d at 286; *Young*, 123 Wn.2d at 195; *State v. Fisher*, 96 Wn.2d 962, 967, 639 P.2d 743 (1982).

The Yokleys correctly observe that it is not unlawful for a properly licensed person to sell explosive devices. They also correctly assert that the affidavit in support of the search warrant for their home did not expressly state that they were not licensed to sell explosives devices. The affidavit did, however, state that: (1) there was evidence of "Illegal Possession of Explosive Devices" and of an "illegal Explosive[s] Factory" at the specified locations within the affidavit (CP at 16, 20); (2) an undercover King County police officer telephoned Donald Yokley and placed "an order for [a] large amount of improvised illegal explosive devices . . . for a cost of $7,000.00 which included delivery cost" (CP at 21); (3) after the undercover police officer ordered the explosive devices from Donald Yokley, Yokley was observed taking a plastic bag and white box from his apart-

---

[12]A court only "abuses its discretion when its exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons." *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984).

ment and placing them in a car that was registered to him and his wife, Penny, and then driving to his wife's place of employment, where he took several white boxes from the car he was driving and loaded them into another car, which was also registered to him and Penny, and then driving off in the latter car; (4) Donald Yokley then proceeded to deliver these same boxes to an undercover officer at the Northgate Mall and the officer handed Yokley $7,000 in cash, after which the police arrested him; (5) police officers opened one of the boxes that Yokley delivered on scene and it was found to contain what appeared to be explosive devices; (6) during the delivery the undercover police officer said to Yokley, "I guess you want something from me," to which Yokley responded, "I want to get out of here quick" (CP at 21, 22); and (7) after Donald Yokley's arrest police officers searched his person and found paperwork relating to the manufacture of illegal explosives.

■ This information, all of which was set forth in the sworn affidavit of a King County police detective, provides support for the magistrate's decision that there was probable cause to believe contraband existed at the Yokleys' home. More specifically, we are satisfied that the magistrate could *reasonably infer* from the information in the affidavit that Donald Yokley was probably engaged in the unlicensed manufacture and sale of explosive devices. The inference that Donald Yokley was unlicensed logically follows because "[i]n performing his independent, detached function, the magistrate is to operate in a commonsense and realistic fashion. *He is entitled to draw commonsense and reasonable inferences* from the facts and circumstances set forth." *State v. Helmka*, 86 Wn.2d 91, 93, 542 P.2d 115 (1975) (emphasis added). In addition, in *Fisher* we stated that the " 'support for issuance of a search warrant is sufficient if, on reading the affidavits, an ordinary person would understand that a violation existed and was continuing at the time of the application.' " *Fisher*, 96 Wn.2d at 965 (quoting *State v. Clay*, 7 Wn. App. 631, 637, 501 P.2d 603 (1972)). In short, we are satisfied that an "ordinary

person" reading the affidavit in this case would reasonably conclude that Donald Yokley was engaged in the unregulated sale and/or manufacture of explosive devices "at the time of application" for the search warrant.

■ It is important to note in this regard that "[s]earch warrants are to be tested and interpreted in a commonsense, practical manner, *rather than in a hypertechnical sense.*"[13] *State v. Perrone*, 119 Wn.2d 538, 549, 834 P.2d 611 (1992) (emphasis added); *Helmka*, 86 Wn.2d at 93 (stating that the "reviewing court should not engage in a hypertechnical examination of the affidavit"); *State v. Patterson*, 83 Wn.2d 49, 61, 515 P.2d 496 (1973) (stating that the supporting affidavit for a search warrant "must be viewed in the light of common sense and need not be expressed in formal language, nor meet the procedural and linguistic requirements of judicial pleadings, nor rise to the standards for the admissibility of trial evidence"). If this precedent is to have any meaning or effect, the circumstances of this case compel us to defer to the magistrate's determination of probable cause. Furthermore, this conclusion is buttressed by the fact that both this court and the United States Supreme Court have held that " '[a]llegations of negligence or innocent mistake [in the drafting of a supporting affidavit] are insufficient' " to void a warrant. *Seagull*, 95 Wn.2d at 908 (quoting *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)). The affiant's failure to specifically state that Donald Yokley did not possess an explosives license, when one can easily draw this inference from the affidavit, clearly falls within the category of "negligence" or "innocent mistake."

In sum, we believe that an ordinary person viewing the affidavit in a commonsense manner would reasonably infer that Donald Yokley probably did not possess a license to sell explosive devices. Accordingly, we affirm the Court of

[13]Significantly, the affiant did set forth the statutory licensing requirements of RCW 70.74.022 and stated that there was evidence of the crime of illegal (i.e., unlicensed) possession of explosives devices. Accordingly, the trial court's finding that the affidavit did not establish probable cause would seem to fit the very definition of "hypertechnicality."

Appeals' decision that the affidavit in support of the search warrant for the Yokleys' residence and vehicles provided probable cause to believe that Donald Yokley's conduct was unlicensed.

## 2. The Trial Court's Order of Dismissal of All Charges

The Yokleys contend, additionally, that the Court of Appeals erred when it reversed the trial court's order dismissing the charges against them on the basis that the devices seized from them were not "fireworks." As previously noted, the trial court conducted a pretrial hearing on the Yokleys' motion to dismiss the charges. At that hearing it received testimony regarding the definitions of "fireworks" and "explosives" as they relate to the Washington State Explosives Act and the Fireworks Law. The trial court then made a *factual determination* that the explosive items seized from the Yokleys were "fireworks" and thus exempt from the Explosives Act pursuant to RCW 70.74.191(6) and, based on that determination, dismissed the charges against the Yokleys.

In our view, the trial court had no basis for conducting a hearing on the motion to dismiss, much less dismissing the charges against the Yokleys. The trial had not started and a *"Knapstad* motion"[14] had not been filed. Furthermore, there was no stipulation to facts and no waiver of a jury trial. The trial court simply conducted this pretrial hearing and dismissed the charges after finding that the seized items constituted "fireworks." This was error because the nature of the seized devices is a *factual* issue that should have been presented to the jury. We hold, therefore, that the Court of Appeals correctly determined

---

[14]In *State v. Knapstad*, 107 Wn.2d 346, 356, 729 P.2d 48 (1986), we held that a defendant may move to dismiss the case against him or her by submitting to the trial court a "sworn affidavit, alleging there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt." The State can defeat a *"Knapstad* motion" "by filing an affidavit which specifically denies the material facts alleged in the defendant's affidavit." *Knapstad*, 107 Wn.2d at 356; *State v. Groom*, 133 Wn.2d 679, 684, 947 P.2d 240 (1997).

that the trial court's order of dismissal should be set aside and the case should proceed to trial.

## III. CONCLUSION

In sum, we conclude that Yim and Samphao have failed to carry their burden of establishing that they received ineffective assistance of counsel. The Court of Appeals, therefore, properly denied their PRPs.

In addition, we hold that the Court of Appeals correctly reversed the suppression order the trial court entered in *State v. Yokley*. On the more significant issue in the case against the Yokleys, we hold that in dismissing the charges against them, the trial court usurped the function of the jury and, thus, erred.

For the reasons stated above, we affirm the Court of Appeals in both cases.

GUY, C.J., SMITH, MADSEN, TALMADGE, and IRELAND, JJ., and SEINFELD, J. PRO TEM., concur.

SANDERS, J. (dissenting) — The majority refuses to allow Andrew Yim and Deng Samphao the opportunity to withdraw their ill-advised guilty pleas because, as the majority sees it, Yim and Samphao were purveyors of explosives, not fireworks. To reach that conclusion, the majority reads Washington's explosives act, RCW 70.74 (Explosives Act), in pari materia with the subsequently enacted State Fireworks Law, RCW 70.77 (Fireworks Law). By the majority's logic, in order for Yim and Samphao to be exempted from the Explosives Act, they must have sold "fireworks" as defined by the Fireworks Law which, the majority argues, the defendants have failed to so establish.

The majority errs in two respects. First, the purpose of the doctrine of in pari materia, like other doctrines of statutory construction, is to assist in the definition of legislative intent. However this doctrine does not infer intent across or between disparate enactments, as between the Explo-

sives Act and Fireworks Law, especially when the latter did not even exist when the former was enacted. Second, it is far from clear that Yim and Samphao were manufacturing and selling explosives, as opposed to "fireworks."

Following the Court of Appeals, the majority contends:

> [T]he most reasonable reading of the Explosives Act and the Fireworks Law is that the only explosive items and activities that are exempt from the Explosives Act, under the "fireworks" exemption, are those items and activities which are regulated under the Fireworks Law. This holding is reasonable because the Fireworks Law and the Explosives Act, which both govern the manufacture, purchase, sale, possession, transportation, et cetera, of potentially dangerous explosive devices, stand in pari materia due to the fact that they "relate to the same person or thing, or the same class of persons or things."

Majority at 591-92 (quoting *State v. Houck*, 32 Wn.2d 681, 684, 203 P.2d 693 (1949)).

While maxims of statutory construction dictate that "all acts relating to the same subject matter or having the same purpose[ ] should be read in connection therewith as together constituting one law," *Houck*, 32 Wn.2d at 684-85, it is moreover true that we should understand and apply statutes in accordance with the ordinary meaning of the words contained therein in pari materia with their context. *In re Personal Restraint of Well*, 133 Wn.2d 433, 445, 946 P.2d 750 (1997) (Sanders, J., dissenting). The context of a statute is found by reference to that statutory scheme itself, including other statutes that were part of the same enactment, but not by reference to an entirely different enactment, let alone statutes which did not yet exist.

The doctrine of in pari materia means "each provision of a statute should be read together with other provisions in order to determine legislative intent." *In re Estate of Kerr*, 134 Wn.2d 328, 336, 949 P.2d 810 (1998). We have noted in this regard, "The purpose of reading statutory provisions in pari materia with related provisions is to determine the legislative intent underlying the entire statutory scheme

and read the provisions 'as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes.' " *State v. Williams*, 94 Wn.2d 531, 547, 617 P.2d 1012, 24 A.L.R.4TH 1191 (1980) (quoting *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974)). To broaden the use of in pari materia beyond these narrow boundaries—i.e., using it as a vessel to navigate beyond distinct statutory enactments—is to usurp the sought-after legislative intent by judicial construction out of whole cloth.

The Explosives Act was enacted in 1931. LAWS OF 1931, ch. 111, §§ 1-22. And its language exempting "fireworks," former RCW 70.74.191(5), was enacted in 1969. LAWS OF 1969, Ex. Sess., ch. 137, § 5. However, the Fireworks Law is of more recent vintage, having been first enacted in limited form in 1951, LAWS OF 1951, ch. 174, §§ 1-11, and gradually strengthened through subsequent legislation into the present decade. RCW 70.77.126, which defines "fireworks" for the purposes of the Fireworks Law, did not even rise above the horizon until 1982, and thereafter was tweaked and legislatively refined through 1995. LAWS OF 1982, ch. 249, § 1; LAWS OF 1995, ch. 61, § 3.

It therefore strains credulity to suggest that the Explosives Act means something today other than what it meant in 1931 and 1969 simply because an enactment in 1982 defines "fireworks" for the purpose of a wholly different enactment. The constitutional way to alter the Explosives Act is through legislative amendment, not subsequent enactment of separate statutes.

In any event, resort to the tools of statutory construction is appropriate only if a statute is ambiguous. Where a statute is unambiguous, we must determine the legislature's intent from the language of the statute alone. *Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994). In that case, we look to the ordinary meaning of the words used by the legislature, and that meaning controls. *Louisiana-Pacific Corp. v. Asarco Inc.*, 131 Wn.2d 587, 600, 934 P.2d 685

(1997). Absent specific statutory definition of a word, we look to the plain and ordinary meaning of the word as found in a dictionary. *State v. Bolar*, 129 Wn.2d 361, 366, 917 P.2d 125 (1996). Thus if "fireworks" is defined in the Explosives Act, we need look no further. If it is not defined, we repair to an ordinary dictionary definition.

Let us then give credence to the plain, unambiguous definition found squarely within the Explosives Act:

> The term "pyrotechnics" shall be held to mean and include any combustible or explosive compositions or manufactured articles designed and prepared for the purpose of producing audible or visible effects which are commonly referred to as fireworks.

Former RCW 70.74.010. This provision obviously defines "fireworks" by reference to the more technical "pyrotechnics."[15] Its definition comports with an ordinary meaning of "firework" as "a device for producing a striking display (as of light, noise, or smoke) by the combustion of explosive or flammable compositions esp. for exhibition, signaling, or illumination. . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 856 (1976). I submit the statutory and dictionary definitions of "fireworks" are equivalent.

Here Yim and Samphao manufactured and sold "M-80s" and "tennis ball bombs." Nothing in the record would lead us to believe these items were manufactured and sold with any other intent than the production of "audible or visible effects." Former RCW 70.74.010. Moreover nothing before us bolsters the majority's assumption that these devices were "commonly used or intended for the purpose of pro-

---

[15]Even if this were an ambiguous definition of "fireworks," the rule of lenity would compel us to construe the Explosives Act, absent legislative intent to the contrary, in Yim and Samphao's favor. *In re Personal Restraint of Sietz*, 124 Wn.2d 645, 652, 880 P.2d 34 (1994). The Court of Appeals refused to apply the rule of lenity "[b]ecause the statutory scheme and legislative history [of the Explosives Act] clearly evidence an intent to only exempt items already regulated by the Fireworks Law," thus opining the rule of lenity would thwart legislative intent. *State v. Yokley*, 91 Wn. App. 773, 781 n.15, 959 P.2d 694 (1998). However the legislative intent the Court of Appeals divines between these distinct statutory schemes is far from clear.

ducing an explosion[ ] that . . . may cause such a sudden generation of highly heated gases that the resultant gaseous pressures are capable of producing destructive effects on contiguous objects or destroying life or limb" which would make them explosives under RCW 70.74.010(3). Majority at 584 n.1 (quoting RCW 70.74.010(3)). There is simply no evidence to even suggest Yim and Samphao's mens rea was anything other than to manufacture and sell items intended to produce audible and visible effects. Moreover I suspect these tennis balls may have become very "audible" and "visible" once altered and exploded. Such items *may*, if used insouciantly, be "capable of producing destructive effects on contiguous objects or destroying life or limb," *id.*, but the majority's attempt to turn these putative fireworks into explosives by way of judicial construction, once lit, fizzles. Most fireworks fitting the majority's definition may have destructive effects depending on their use; however that is not their intended purpose of manufacture.

In sum, the majority is correct that the validity of Yim and Samphao's ineffective assistance of counsel claim "turns on whether they have established, as they assert, that the items they manufactured and possessed were 'fireworks.' " Majority at 591. Yet, it would seem under the plain wording of the Explosives Act, which exempts fireworks, Yim and Samphao have met this threshold. Accordingly I would allow Yim and Samphao their day in court to attack their guilty plea and assert their counsel, who had simply assumed the prosecutor's charging papers were accurate, and who advised Yim and Samphao to fill out boiler plate guilty pleas (quoted at Majority 591), "fell below an objective standard of reasonableness based on consideration of all the circumstances," *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995), and that "[T]here is a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial." *In re Personal Restraint of Riley*, 122 Wn.2d 772, 780-81, 863 P.2d 554

(1993) (citing *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

I dissent.

JOHNSON, J., concurs with SANDERS, J.